**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT PIKEVILLE**

**CIVIL ACTION NO. 17-87-DLB**

**DONALD R. FUGATE**                                                       **PLAINTIFF**

vs.                      **MEMORANDUM OPINION AND ORDER**

**NANCY A. BERRYHILL, Acting
Commissioner of Social Security**                                    **DEFENDANT**

\* \* \* \* \* \* \* \* \* \* \* \*

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record, will affirm the Commissioner's decision, as it is supported by substantial evidence.

**I.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On January 28, 2014, Plaintiff Donald R. Fugate filed an application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), alleging disability beginning on June 15, 2012. (Tr. 159-66). Specifically, Plaintiff alleged that he was limited in his ability to work due to the following: "Learning dib, back, neck, heart, hearing, vision" and "Lower hernia." (Tr. 183).

Plaintiff's claim was denied initially and on reconsideration. (Tr. 87-88, 111-12). At Plaintiff's request, an administrative hearing was conducted on December 5, 2016, before Administrative Law Judge ("ALJ") Roger Reynolds. (Tr. 36-64). On February 2, 2016, ALJ Reynolds ruled that Plaintiff was not entitled to benefits. (Tr. 12-28). This

decision became the final decision of the Commissioner when the Appeals Council denied review on March 15, 2017. (Tr. 1-6).

On May 19, 2017, Plaintiff filed the instant action. (Doc. # 1). This matter has culminated in cross-motions for summary judgment, which are now ripe for the Court's review. (Docs. # 13 and 15).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Id.* Rather, the Court must affirm the Commissioner's decision, provided it is supported by substantial evidence, even if the Court might have decided the case differently. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999). If supported by substantial evidence, the Commissioner's findings must be affirmed, even if there is evidence favoring Plaintiff's side. *Listenbee v. Sec'y of Health and Human Servs.*, 846 F.2d 345, 349 (6th Cir. 1988). Similarly, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d 780, 781-82 (6th Cir. 1996).

The ALJ, in determining disability, conducts a five-step analysis. Step One considers whether the claimant is still performing substantial gainful activity; Step Two, whether any of the claimant's impairments are "severe"; Step Three, whether the impairments meet or equal a listing in the Listing of Impairments; Step Four, whether the claimant can still perform his past relevant work; and Step Five, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since June 15, 2012. (Tr. 14). At Step Two, the ALJ determined that Plaintiff had the following severe impairments: "chronic neck and low back pain secondary to degenerative disc disease of the cervical and lumbar spine with multilevel disc bulges and osteophyte formation; chronic obstructive pulmonary disease ('COPD') secondary to coal workers pneumoconiosis and nicotine abuse; mild left ventricular cardiac dysfunction with bradycardia (20 CFR 404.1520(c) and 416.920(c))." *Id.* At Step Three, while recognizing that Plaintiff had "severe" impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that "meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.152(d), 404.1525, 414.1526, 416.920(d), 416.925 and 416.926)." (Tr. 16).

At Step Four, the ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work, as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b),

3

with the exertional and non-exertional limitations as follows:

> [N]o climbing of ropes, ladders or scaffolds, occasional climbing of stairs or ramps, occasional stooping, kneeling, crouching or crawling, no aerobic activities such as running or jumping, no work with hands over the head; no aerobic activities such as running or jumping, no work with hands over the head; no operation of foot pedal controls; no exposure to concentrated dust, gases, smoke, fumes, temperature extremes, excess humidity, concentrated vibration or industrial hazards.

*Id.* Based upon the RFC, the ALJ concluded that Plaintiff was not able to perform his past relevant work. (Tr. 26). Accordingly, the ALJ proceeded to Step Five and found that, considering Plaintiff's age, education, work experience, and RFC, jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 27-28). The ALJ therefore concluded that Plaintiff was not under a disability, as defined in the Social Security Act, from June 15, 2012, through the date of decision. (Tr. 28).

  **C. Substantial evidence supports the ALJ's decision.**

Plaintiff presents only one issue on appeal, arguing that the decision to deny Plaintiff benefits was not supported by substantial evidence. (Doc. # 13-2 at 10). For the reasons below, the Court disagrees and finds that the ALJ's decision is supported by substantial evidence.

Plaintiff challenges the ALJ's decision through three arguments: (1) the ALJ failed to find severe non-exertional impairments; (2) the ALJ's RFC determination was erroneous; and (3) the ALJ erred in determining that there was a sufficient number of jobs in the national economy that Plaintiff could perform. (Doc. # 13-2 at 12-13).

  ***1. Substantial evidence supports the ALJ's determination of the severity of Plaintiff's mental impairment.***

Plaintiff's first challenge is against the ALJ's determination that Plaintiff did not suffer from a severe mental impairment. According to Plaintiff, he is almost illiterate, with

4

reading recognition and comprehension at Grades 4.5 and 4.8, and has an anxiety disorder. *Id.* at 4. In addition, Plaintiff believes that the ALJ should have given more weight to a one-time determination that Plaintiff has only a "fair" ability to relate to co-workers and retain attention and concentration, and a "poor" ability to deal with the public or occupational stresses. *Id.* at 7.

The ALJ's analysis in support of his determination that Plaintiff did not have a severe mental impairment is comprehensive. (Tr. 15-17, 21, 23, 26). In summarizing his review of the evidence, the ALJ noted that he considered the "four broad functional areas set out in the disability regulations for evaluating mental disorders and in Section 12.00 C of the Listing of Impairments." (Tr. 15). The ALJ determined that Plaintiff had (1) mild limitation in his activities of daily living, (2) mild limitation in his social function, (3) mild limitation in his concentration, persistence or pace, and (4) no episodes of decomposition. This was supported by evidence that Plaintiff spent most of his day smoking cigarettes, watching television, napping, talking on the phone, and watching his grandchildren. (Tr. 15, 20). At his face-to-face interview at the Social Security field office, Plaintiff was observed to "exhibit[ ] no limitations," and "had no trouble hearing, reading, breathing, understanding, being coherent, concentrating, talking, answering, sitting, standing, walking, seeing, using his hands and writing." (Tr. 17). At the sole session Plaintiff attended with Doctor Claude Dotson, Psy.D., the doctor noted that Plaintiff was "talkative and engaged throughout the session" but had been "haunted" by some traumatic experiences. (Tr. 21). One month after he was provided with "relaxation exercises" to help cope with his post-traumatic stress disorder, Plaintiff indicated to his osteopathic doctor that he was "currently stable" not interested in further treatment. *Id.* A subsequent

evaluation with Phil Pack, M.S. indicated that Plaintiff had seen a counselor once, was not receiving any mental health treatment, was not taking any psychotropic medication, and that Plaintiff was generally well-groomed, clear-spoken, well-oriented, had average cognitive skills, presented in a pleasant mood, and showed fair insight and judgment. (Tr. 23).

In consideration of this evidence, the ALJ determined that Plaintiff's "medically determinable mental impairments of depression, anxiety and reading disorder, considered singly and in combination, do not cause more than a minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (Tr. 15). Thus, substantial evidence supports the ALJ's determination that Plaintiff's mental impairments were nonsevere.

Moreover, because the ALJ found that some of Plaintiff's other impairments were in fact severe, Plaintiff's challenge to this particular finding is inconsequential. The Sixth Circuit has reasoned that "the severity determination is 'a de minimus hurdle in the disability determination process.'" *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008) (quoting *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988)). Having determined that other impairments were severe, the analysis over Plaintiff's claims did not stop at Step Two, and the ALJ therefore considered both the severe and nonsevere impairments in the subsequent steps of his analysis. This renders the ALJ's determination that Plaintiff's mental impairments were nonsevere "legally irrelevant." *Id*.

### 2. *Substantial evidence supports the ALJ's determination of Plaintiff's RFC.*

A claimant's RFC is "the most that [he] can still do despite [his] limitations." 20 C.F.R. § 404.1545(a)(1). The ALJ determines a claimant's RFC "based on all of the

relevant medical and other evidence," assessing "the nature and extent of [the claimant's] physical limitations" to determine the claimant's RFC "for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(a)(3), (b). When a claimant has a severe impairment, but his symptoms do not meet or equal those listed in Appendix 1, the ALJ will still consider all of the medical and nonmedical evidence to determine the limiting effects of the impairment. 20 C.F.R. § 404.1545(e). *See also Erslinger v. Comm'r of Soc. Sec.*, 476 F. App'x 618, 621 (6th Cir. 2012) ("In formulating a residual functional capacity, the ALJ evaluates all relevant medical and other evidence and considers what weight to assign to treating, consultative, and examining physicians' opinions.").

Plaintiff challenges the ALJ's RFC determination based on one fundamental proposition: "[T]he medical evidence provided in [the] record by physicians and experts is entirely favorable to [Plaintiff's] claim." (Doc. # 13-2 at 5). To support this basic contention, Plaintiff argues as follows: the ALJ "mistakenly rejected" the RFC from Eastern Kentucky Physical Therapy; Plaintiff's inability to work is "the result of chronic neck and low back pain"; and "there is absolutely no legitimate evidence upon which to base [the ALJ's] medical conclusions." *Id.* at 1, 4, 12. As a corollary, Plaintiff also argues that if his RFC would have been reduced to "sedentary," and the ALJ had found that Plaintiff was fifty years old, then Plaintiff would have been found disabled   *Id.* at 4-5. Finally, Plaintiff objects to the ALJ's conclusion that the type of medical treatment received by Plaintiff was not that which would be expected of a disabled individual; instead Plaintiff received treatment that was considered "routine and conservative." *Id.* at 9.

But Plaintiff is incorrect: the evidence is not entirely favorable to his claim. Instead, a review of the record shows that the ALJ's determination of Plaintiff's RFC is supported

by substantial evidence. The ALJ considered the May, June, and July, 2012 records from Plaintiff's primary care physician, Dr. Hughes Helm, in which Plaintiff reported "good pain relief" from his back and neck pain with medication, Plaintiff's decision to decline physical therapy, and his sidework as a roofer after he became unemployed. (Tr. 18). The ALJ also reviewed the December 2012 through November 2013 medical records produced from a pain management clinic. These records include Plaintiff's indication that he was in less pain than the year before, Plaintiff's admission that the physical therapy he had tried effectively relieved his pain, and that he had fallen off a ladder but received only minor injuries. (Tr. 18-19). Plaintiff's physical exam and medications remained unchanged during this time period, except for the addition of Neurontin, which a urine drug screen indicated Plaintiff was not taking. (Tr. 19).

From December 2013 through the end of 2015, Plaintiff met regularly with Doctor Joe Kingery, D.O. to treat his neck and back. (Tr. 20-23). The records indicated that Plaintiff responded well to pain medication, that variations in pain were attributable to working with horses, which involved "pulling and lifting," in addition to persisting in physical therapy, falling on the ice at home, increased stress related to his brother's health, and performing "odd jobs." (Tr. 20-22). Throughout this time, the records indicate that Plaintiff's pain medication allowed him to manage his activities of daily living. (Tr. 20, 22). The ALJ also reviewed the objective medical records found in MRIs and X-Rays taken in January 2013, June 2013, August 2014, and December 2014. (Tr. 18-21).

The ALJ noted that throughout Plaintiff's medical history he had stayed fairly active, engaging in activities that included roofing (Tr. 18), climbing a ladder (Tr. 19), helping the neighbors unfreeze their water pipes (Tr. 20), working with horses, including

pulling and lifting (Tr. 20), performing moderate household chores such as scrubbing, walking for up to a mile and a half without pain (Tr. 20), going on a trail ride with horses (Tr. 20), performing odd jobs and staying active (Tr. 22), holding his grandchildren often (Tr. 22), engaging in carpentry work for additional income (Tr. 23), working in construction and concrete (Tr. 18), and lifting his thirty-pound grandchild. (Tr. 26).

The ALJ also reviewed the functional capacity evaluations of physical therapist Franklin Strumbo and the State Disability Determination Services physicians. (Tr. 23-26). In doing so, the ALJ indicated that he gave less weight to the opinion of Mr. Strumbo, as he was not an acceptable medical source, only met and evaluated Plaintiff once, did not treat plaintiff, did not review the entire record, and Mr. Strumbo's evaluation was not supported by the record of Plaintiff's past activities. (Tr. 26). In contrast, the ALJ gave the State Disability Determination Services medical and psychological consultants substantial evidentiary weight, finding that they were "consistent with the record as a whole." (Tr. 25).

In determining Plaintiff's RFC, the ALJ found, after "careful consideration of the evidence," that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's statements about the "intensity, persistence and limiting effects of these symptoms are not entirely credible." (Tr. 18). Plaintiff complained of his inability to sit or stand for extended periods of time, suggesting that all he could do was stay at home and watch television. (Tr. 17). However, the medical and other evidence suggested a much more active man, whose routine and conservative pain management has allowed him to stay physically active and manage his activities of daily living. (Tr. 16-26).

"Substantial evidence review comes to this: Did the ALJ use 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'?" *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 904 (6th Cir. 2016) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). The ALJ's comprehensive analysis more than "satisfies this modest standard." *Id.* Thus, the ALJ's determination of Plaintiff's RFC is supported by substantial evidence.

> 3. ***Substantial evidence supports the ALJ's determination that jobs exist in significant numbers in the national economy that Plaintiff can perform, considering his age, education, work experience, and RFC.***

Finally, Plaintiff argues that the ALJ erred in his reliance on the vocational expert's ("VE") testimony, suggesting that the VE testified "in direct opposition to the details set forth in the Dictionary of Occupational Titles." Plaintiff's complaint with the ALJ's determination at this step is twofold. First, Plaintiff argues that the ALJ did not apply the grid rules appropriately. (Doc. #13-2 at 8). Second, Plaintiff argues that the alternative jobs that the VE opined Plaintiff could perform did not take into account Plaintiff's limited reading and learning skills. *Id.* at 8-9.

But Plaintiff's argument misses the mark. The grid rules are promulgated by the Social Security Administration at 20 C.F.R. § 404.1569 to help determine whether significant numbers of jobs exist for a person whose characteristics "exactly match the characteristics in one of the rules." *Wright v. Massanari*, 321 F.3d 611, 615 (6th Cir. 2003). But the grids "account for only exertional limitations." *Amir v. Comm'r of Soc. Sec.*, 705 F. App'x 443, 451 (6th Cir. 2017). In addition, and crucially, where "the characteristics of the claimant do not identically match the description in the grid, the grid is only used as a guide … and the ALJ must elicit additional evidence, such as expert

testimony, to identify jobs in the national economy which the claimant could perform." *Id.* (quoting *Kirk v. Sec'y of Health & Hum. Servs.*, 667 F.2d 524, 528 (6th Cir. 1981); *Maziarz v. Sec'y of Health & Hum. Servs.*, 837 F.2d 240, 246 (6th Cir. 1987)). The ALJ considered the grids, and then asked for expert testimony from the VE to identify whether there were jobs that Plaintiff could perform. (Tr. 27-28, 56-60). This was an appropriate application of the grid rules.

Plaintiff is also mistaken in his argument that the VE did not take into account Plaintiff's limited reading and learning capacities. In fact, the VE very specifically took into account Plaintiff's educational levels in determining the number of available jobs. (Tr. 58-59) ("I think, however with the need for [exertional limitations] as well as the education level here as described I would restrict incidents by approximately one-half.").

The *Amir* case provides a good comparison. In this case, the Sixth Circuit affirmed the ALJ's finding, relying on a VE, that a younger individual (aged 45-49), who was limited to light work and who had limited education and no transferable skills, was not disabled. *Amir*, 705 F. App'x at 451. Similarly, the ALJ in this case found a younger individual who was limited to light work and had limited education, with no transferable skills, was not disabled because there were significant number of jobs in the national economy that Plaintiff could perform. (Tr. 27-28). Thus, substantial evidence supports the ALJ's determination that Plaintiff was not disabled because there were significant numbers of jobs in the national economy that Plaintiff could perform.

In the end, Plaintiff is asking this Court to find that the ALJ wholly misinterpreted the evidence. However, this is equivalent to requesting a *de novo* review of the record, a task far beyond the Court's limited role in determining whether the ALJ's finding is

supported by substantial evidence. *See Roberts v. Astrue*, No. 1:09-01518, 2010 WL 2342492, at *9 (N.D. Ohio June 9, 2010). As stated earlier, an administrative decision is not subject to reversal merely because substantial evidence would have supported the opposite conclusion. *Smith v. Chater*, 99 F.3d at 781-82. Substantial evidence exists to support the ALJ's decision, and the Court's review must stop there.

## III. CONCLUSION

Accordingly, for the reasons stated herein,

**IT IS ORDERED** as follows:

(1) The decision of the Commissioner is found to be supported by substantial evidence and is hereby **AFFIRMED**;

(2) Plaintiff's Motion for Summary Judgment (Doc. # 13) is hereby **DENIED**;

(3) Defendant's Motion for Summary Judgment (Doc. # 15) is hereby **GRANTED;** and

(4) A Judgment in favor of Defendant Commissioner will be entered contemporaneously herewith.

This 11th day of April, 2018.



Signed By:
David L. Bunning
United States District Judge

K:\DATA\SocialSecurity\MOOs\Pikeville\17-87 Fugate MOO.docx